WOODWARD & SON v. UNITED STATES (No. 1565).[1]

1. FISH, BONED.

Salmon from which the larger part of the backbone had been removed, leaving the side bones and other bones in the fish, and which had been treated with a solution of salt or brine for the purpose of preserving them during transportation and not sufficient to affect their acceptability to the consuming public as fresh fish, were not boned within the meaning of paragraph 216 of the tariff act of 1913, but were entitled to free entry under the provision for " fresh-water fish, and all other fish not otherwise specially provided for " in paragraph 483 of said act.

2. " BONED " DEFINED.

The term " boned," according to its common signification, does not necessarily mean boneless, but substantially freed of bone.

Whether or not an article is boned can not be determined by the process employed. A process, for instance, which will render a flat fish like the halibut boned may not have the same result when applied to a fish of different anatomical construction, such as the salmon.

United States Court of Customs Appeals, November 19, 1915.

APPEAL from Board of United States General Appraisers, G. A. 7719 (T. D. 35364).

[Reversed.]

*Walden & Webster (Henry J. Webster* of counsel) for appellant.
*Bert Hanson,* Assistant Attorney General, for the United States.

[1] Reported in T. D. 35918 (29 Treas. Dec., 576).

Before Montgomery, Smith, Barber, De Vries, and Martin, judges.

De Vries, Judge, delivered the opinion of the court:

The importation was of salmon conditioned as hereinafter recited. It was classified for dutiable purposes under paragraph 216 of the tariff act of 1913, as " fish, skinned or boned." Due protest was made, alleging that the merchandise was entitled to free entry under paragraph 483 of the act as " fresh-water fish, and all other fish not otherwise specially provided for in this section." The Board of General Appraisers overruled the protest, and appeal is made to this court.

At the hearing before the Board of General Appraisers but one witness, a member of the importing firm, testified. The condition of the merchandise was by him described as follows:

Q. Will you tell us what is done to them as to the removal of the bones or any part of the bones?—A. The main bone, when the knife is run through to split the fish, is ripped out of the fish, although part of it remains there after the knife has cut through some of the bone.

Q. That is the backbone?—A. The main spinal bone; that is almost entirely removed, although some of it remains there.

Q. How about the ribs or lateral bones?—A. The rib bones are all left in, and the little side bones, the nape bones, are all left in, and the fin bones. This is the fin bone here, and all these are rib bones.

Q. All those you have mentioned remain in the fish?—A. They all remain in the fish, and a little piece of the spinal bone remains at the tail there.

Q. What is the purpose of removing that backbone?—A. The backbone is ripped out of the fish in order to allow the blood to flow freely from the fish; if the bone were not removed, the blood would congeal and clot under there and turn into black spots; by taking that main spinal bone out, which is in the thickest portion of the fish, the solution of salt or brine is allowed to enter into all parts of the fish and effect a gas which is necessary for its preservation; they use as little of the salt or brine as possible, and in order to get the salt permeated through the thick portion of the fish and effect the proper preservation they remove the main central bone in order that the salt may go into the meat of the fish.

 *  *  *  *  *  *  *

Q. Do you know of any fish that are imported or dealt in that are boned, having all the bones removed?—A. Yes.

Q. What kinds of fish are they?—A. Codfish, herrings, halibut, flitches.

 *  *  *  *  *  *  *

Q. I understood you to say all the bones remained in the fish, except the large bone through the central part of the fish?—A. They do; that is correct.

 *  *  *  *  *  *  *

Q. Now, you speak of handling codfish that had been boned?—A. Yes.

Q. There are side bones remaining, with small bones remaining in boned cod, aren't there?—A. I don't catch you.

Q. There are small side bones remaining in boned cod, aren't there?—A. Not in boned cod.

Q. Not any bones whatever?—A. No.

In overruling the protest the Board of General Appraisers relied upon a previous decision, the doctrine of which in this case it ex-

pressly extended. The theory of the board is best given in its own words:

We held in the case of P. C. Parkhurst, Abstract 35547 (T. D. 34440), that fletched halibut from which the backbone had been removed, which removal had in effect removed most, if not all, of the other bones, was fish, boned, within this provision, and we think in the case at bar the removal of the backbone, necessarily carrying with it some of the other bones, would substantially advance its condition into that of fish, boned, even if some other bones still remained. We therefore extend the doctrine of the halibut case to include the merchandise here in dispute.

A petition for a rehearing was filed, directed more to the interpretation of the unimpeached testimony of the member of the importing firm. The rehearing was denied in language, in part, as follows:

While we think this was a fair inference from the record taken as a whole and from the general knowledge that removing the backbone is apt to carry with it some of the smaller bones, we do not rest our decision upon that fact, but on the fact that the removal of nearly the whole backbone substantially boned the fish. We stated that we did not believe that the term "boned" should be limited to boneless fish, that is, fish from which every bone has been removed.

In order, therefore, that the importer may not be precluded by anything we said from squarely raising the issue on the question of law we make this explanatory statement in overruling the motion for rehearing. We might add that the witness Woodward made a full and entirely credible statement as to the preparation of the fish in question.

An exact issue is therefore presented by the record—can a fish be said to be boned within the terms of paragraph 216, *supra*, when the backbone alone has been removed? It may be pertinent to remark in passing that it is fairly shown, and in no wise disputed in this record, that the backbone alone was removed from these importations. Indeed, not all of the backbone was removed. Assuredly the record shows that all of the sidebones remained in the salmon as and when imported. We do not think this constitutes a "boned" fish within the provision of the law quoted. The following lexicographic definitions are pertinent:

Webster's New International Dictionary (1910):

*Boned.*—2. (a) Deprived of bones.

Worcester's Dictionary (1908):

*Bone.*—2. To take bones out of, as from meat. "The cooks boned the veal."

Standard Dictionary, Twentieth Century Edition (1909):

*Bone.*—Derivatives: Boned. 2. Freed of bones; boned, as certain preparations of codfish, turkey, etc.

Oxford Dictionary (1908):

*Boned.*—3. Deprived of the bones; especially in cookery.

Century Dictionary and Cyclopedia (1911):

*Boned.*—2. In cookery, freed from bones; as, a boned fowl.

These definitions as well as the common ordinary significance of the term as it occurs to the mind would require that in order that anything may be "boned" it should be substantially boned. The term seems to be customarily applied to edible meats. Ordinarily, then, its significance would require that the meat should be so far denuded of bones that it would be commonly edible by the human kind without further deprivation of bones. Of course, that would not require that the article be rendered boneless, for that might be practically and commercially unnecessary if not impossible. Moreover, the processes which would render one class of meat boned, or one class of fish, if you please, boned, would not necessarily render another class within that state. Illustration is afforded in a decision of the board relied upon but extended herein and much quoted in this controversy, the case of P. C. Parkhurst (Abstract 35547; T. D. 34440). That concerned halibut. It would seem that the processes applied in that case were similar to and not more than the processes applied here. The results, however, of these processes, owing to the condition of the anatomy of the different fishes, were different. The halibut is one of the flat fish like a flounder. The backbone and all the ribs are straight, lying in the same plane. When, therefore, a knife is applied sufficient to rend the backbone from the fish there naturally and necessarily comes with it all of the rib bones. So recites the board in this and the case relied upon by them. These fish, which were salmon, were of different anatomical construction. They were more oval or round, and the rib bones naturally set more at angles with the backbone, being firmly embedded in the oval sides of the fish. The natural and inevitable result, therefore, of the abstraction with a knife of the backbone must be to rend from the fish the backbone alone, severing and leaving within the flesh the rib bones. Any process which would not accomplish this result in this manner it is naturally suggested would so rend and tear the flesh of the sides of the fish as to do serious damage to its commercial qualities.

Upon the whole the record suggests, exactly as stated by the member of the importing firm in his testimony, that the backbone is removed from the salmon in order that the salt or slightly preservative qualities of the brine used may preserve it to a certain degree only in and during the course of importation; the object being not to either completely preserve or bone the fish, but by these processes of treatment to safely transport and enable it to be subsequently placed upon the market as fresh fish, or in a condition so nearly approximating that of fresh fish that it will meet and satisfy the demands of the consuming public for such. We do not think it can in that condition be said to be "boned" within that term as here used by Congress.

The court is, therefore, of the opinion that the decision of the Board of General Appraisers should be, and it is, *reversed.*